## Otis Elevator Company v. Wilson.

(Decided April 10, 1912.)

### Appeal from McCracken Circuit Court.

1. Torts—Peremptory Instruction.—Where the plaintiff sued for damages for injuries caused by being struck by an elevator while he was at work on the elevator shaft, and the proof being contradictory and conflicting as to whether he was guilty of negligence, the trial court properly overruled defendant's motion for a peremptory instruction, and submitted the case to the jury.

2. Negligence—Master and Servant.—Where the relationship of master and servant does not exist, a person operating an elevator owes a duty to exercise ordinary care to avoid injuring other persons who may be working for a different employer in the construction of the building in which the elevator is operated.

3. Damages—Amount for Jury.—Where the testimony is conflicting as to the extent and character of the damage received, it is for the jury to fix the amount of recovery; and its finding will not be interfered with unless it be so excessive as to leave the impression that it was the result of prejudice or passion.

MILLER & MILLER for appellant.

S. H. CROSSLAND and F. E. GRAVES for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In October, 1910, The Falls City Construction Company was engaged in erecting a ten-story building for the City National Bank, in Paducah. The Construction Company made a contract with the Otis Elevator Company, by which the Elevator Company undertook to equip the building with elevators, and install the necessary machinery and apparatus therefor. The two com-

panies had their men at work simultaneously; and, while it was the duty of the Elevator Company to install the elevators, it was not its duty to erect the casings or wire fencings around the elevator shaft that extended from the bottom to the top of the building. Under the contract that work was to be performed by the Construction Company. The appellee, Wilson, was working for the Construction Company in making the wire casings and fencings around the elevator shaft. He was stationed upon the seventh floor adjacent to the shaft, and was standing upon a stepladder, with his head projecting slightly into the elevator shaft, working with a screw driver in fixing a door that opened into the shaft. The elevator was about completed, and was being run up and down the shaft for the purpose of adjusting it in all of its parts, and for the purpose of carrying men and materials to the upper portions of the building. It was not, however, in any respect, under the control of the Construction Company. While Wilson was engaged as above indicated, the elevator started up from the fifth floor. The elevator man gave proper warning of his approach, whereupon Wilson and the others working at the seventh floor moved away from the shaft and let the elevator pass to the ninth floor. The man in charge of the elevator says he notified them as he passed that he would be coming down in a few minutes; but, in this he is squarely contradicted by several witnesses, who testified that the elevator man said nothing upon that subject. However, in a very few moments the elevator began its descent, and as it passed the seventh floor it struck Wilson a glancing blow upon the head and side of the face, tearing his scalp loose, leaving a cut in the skin some three or four inches in length, and two or three smaller cuts upon his head and face. Wilson brought this suit against the Construction Company and the Elevator Company for damages, alleging that while he was engaged in his work of casing around the elevator shaft and hanging the doors on said casings entering into the shaft, he was injured by the gross carelessness and negligence of the agents and employes of the Elevator Company who had charge of the elevator. The suit against The Falls City Construction Company was based upon the theory that it was guilty of gross carelessness and negligence in not providing Wilson a safe place in which to perform his work, and in not providing a signal or warning of some kind to its employes of the approach of

said elevator. The answer presents a traverse, and a plea of contributory negligence. Upon the trial the court directed a peremptory instruction for the Construction Company; and the case having been submitted to the jury as against the Elevator Company, it returned a verdict for plaintiff for $745. From a judgment based upon that verdict the Elevator Company prosecutes this appeal.

A reversal is asked upon three grounds: (1) That the court should have sustained appellant's motion for a peremptory instruction; (2) that the court erred in instructing the jury; and, (3) that the verdict is excessive.

1. Appellant reviews the testimony at some length, and insists that its motion for a peremptory should have been sustained, because the evidence shows that the injury was caused solely by appellee's own carelessness and negligence. The burden of appellant's argument is that Wilson must have seen the approach of the elevator and could not have avoided seeing it, since it was necessarily announced by the electric wire cables attached to the bottom of the elevator, and also by the upward movement of the large iron weights which moved, in full view, upon the side of the shaft. It is argued that every one knows the elevator is descending when the weights are ascending, and that the approach of the elevator is always indicated by the appearance of the electric wire cables hanging from the bottom of the elevator.

It is unnecessary to review the testimony at length since there is a sharp issue made as to whether the appellee did see, or could have seen the elevator approach in its downward course in time to avoid the injury. If Wilson's back was toward the shaft, as he contends, it is entirely probable that he did not see·the approach of the elevator. As is usual in such cases, many collateral issues of fact were discussed and insisted upon by the respective parties. There was evidence, however, upon either side of this proposition amply sufficient to carry it to the jury; and the motion for a peremptory instruction was properly overruled.

2. Was the jury properly instructed? Wilson was not employed by the Elevator Company; he was serving the Construction Company; and in view of the absence of the relationship of master and servant between Wilson and the Elevator Company, appellant insists that the Elevator Company owed Wilson no duty to warn him, where the danger was obvious. In support of this propo-

sition appellant relies upon B. F. Avery & Sons v. Lung, 32 Ky. Law Rep., 702. But the rule contended for by appellant did not authorize the giving of the peremptory instruction asked by the appellant, since it was not, under the proof, clearly apparent that the danger was obvious, or known to Wilson. That question was properly submitted to the jury. Appellant concedes that it owed Wilson the duty to exercise ordinary care to avoid injuring him after discovering his peril, even though the relationship of master and servant did not exist between them. We think this well established rule of law is applicable to this case. Kentucky Central R. R. Co. v. Gastineau's Admr., 83 Ky., 122; Lackat v. Lutz, 94 Ky., 287; Kentucky Distillery & Warehouse Co. v. Leonard, 25 Ky. Law Rep., 2046, 79 S. W., 281, and other similar cases.

Instruction No. 1 followed the rule thus laid down, and reads as follows:

"It was the duty of the defendant, Otis Elevator Co., and its employe in charge of its elevator at the time and place complained of by plaintiff, to exercise ordinary care in the operation of defendant's elevator, to avoid striking and injuring persons engaged in work about the elevator shaft; and if you shall believe from the evidence in this case, that defendant's employe in charge of said elevator, failed to exercise such care and by reason of such failure, as a direct and immediate cause of such failure, plaintiff was struck and injured by same, then the defendant is chargeable with negligence and the law is for the plaintiff, and you will so find; but unless, you shall believe from the evidence in this case, that defendant has been proven guilty of negligence, as defined to you in this instruction, then the law is for the defendant and you will so find."

This instruction properly set forth the duty of appellant to the appellee, and there is no objection to the other instructions. It is insisted, however, that instruction No. 1 is erroneous because it assumes that appellee had the right to be where he was when he was injured, while that question should have been left to the jury. The petition alleges in appropriate terms that the plaintiff was injured while he was at work in the position and place required by his employment, and directed by his foreman; and those allegations are not denied by the answer. The only material issue of fact raised by the pleadings, concerning appellee's right to maintain the action, related

to the negligence of the respective parties at the time of the accident which caused the injury; and that issue was properly presented to the jury.

3. We can not say that the verdict is excessive, or flagrantly against the weight of the evidence. The proof as to the permanency of the injuries was conflicting. The only witnesses upon the subject of the injuries received and their extent, were the appellee and his attending physician. The physician attended appellee for some three weeks, making four or five visits to his home, and subsequently treating appellee at his office. Appellee testified that his injuries have caused a shortness of breath in the mornings, accompanied with an occasional spitting of blood, coughing, and bleeding at the nose. He has incurred a loss and special damage of $245, leaving $500 as compensation for his injuries. The amount of the recovery must, in a very large measure, be left to the sound discretion of a properly instructed jury, and it will not be interfered with unless it be so excessive as to leave the impression that it was the result of prejudice or passion. Bowling Green Gas Light Co. v. Dean, 142 Ky., 684.

Judgment affirmed.