Dr. Clarence E. HUMBERT, Appellant,

v.

**AUDUBON COUNTRY CLUB, Appellee.**

Court of Appeals of Kentucky.
May 16, 1958.

Raymond C. Stephenson, Charles Leibson, Louisville, for appellant.

Stites, Wood, Helm & Peabody, Lively M. Wilson, Louisville, for appellee.

BIRD, Judge.

Dr. Clarence Humbert appeals from a judgment dismissing his action for damages against the Audubon Country Club. He was injured when he slipped and fell on the locker room floor. He charges the Club with negligence in maintaining the floor. After hearing all of the evidence the trial judge directed a verdict for the defendant. Plaintiff contends that the directed verdict was error and he seeks a reversal on that ground.

The plaintiff was a member of Audubon Country Club. As a member he was entitled to use the facilities of the Club and he did so with some frequency. The locker room of the Club is located in the basement of the Club House and is provided for the convenience of the members to change from street wear to golfing attire. The floor of the locker room, as well as other areas frequented by the golfers, such as the grill room and the card room, is covered with asphalt tile. The three aisles that run the length of the locker room have rubber runners on them. There are no rubber runners on any of the other aisles in the locker room, or on any tiled areas of the Club House to which the golfers may go while wearing golf shoes.

On the occasion in question the plaintiff entered the locker room by coming down a flight of concrete steps from the outside into the vestibule, which is also covered with asphalt tile. He then entered through the vestibule door into the north-south aisle, which is usually covered by a rubber runner extending from the vestibule door sill to the end of the aisle. He immediately turned left into the east aisle and proceeded to his locker. The rubber runner on the north-south aisle had been pulled back about four feet from the sill of the vestibule door, its usual position. Although the plaintiff walked over this area in going to his locker, he did not observe this change in the runner. After changing to his golf clothes, including his spiked golf shoes, he retraced his steps along the east aisle. As

he approached the north-south aisle and turned to go out the door through which he had entered a few minutes earlier, he slipped and fell sustaining the injuries of which he complains. Plaintiff alleges that the spot upon which he slipped was always covered with the rubber runner and that its absence at this time left the slick floor exposed, causing him to fall.

Though there is some conflict in the testimony we assume, in resolving the question before us, that the runners were placed there to give protection to Club members and other persons invited to use the locker room, and we also assume that the doctor did fall on that portion of the floor usually covered by a rubber runner. It is, we think, sufficiently established that the defendant had full knowledge of the condition of the floor and the changed position of the runner at the time and place of the accident.

■ Audubon Country Club was under the duty of exercising ordinary care to have the floor where Dr. Humbert fell in a reasonably safe condition for its customary use, which included walking in spiked golf shoes. Lyle v. Megerle, 270 Ky. 227, 109 S.W.2d 598; Leonard v. Enterprise Realty Co., 187 Ky. 578, 219 S.W. 1066, 10 A.L.R. 238; Kroger Grocery & Baking Co. v. Monroe, 237 Ky. 60, 34 S.W.2d 929; City of Madisonville v. Poole, Ky., 249 S.W.2d 133. It is not necessary here to determine whether the furnishing of the runners constituted a part of that duty, and we do not undertake to so determine. Let us assume, however, that the runners were placed and maintained in the aisle because duty did in fact demand it. It follows that any change made by the defendant in the usual position of the runner, creating a dangerous condition, would, in the absence of adequate warning and notice, constitute a breach of duty. This is the position taken by Dr. Humbert.

However, the trial judge held, as a matter of law, that Dr. Humbert was guilty of contributory negligence which precluded

him from recovery. Dr. Humbert testified that he didn't notice the changed position of the runner as he came in and he further testified that he didn't notice the change as he returned to go out on the golf course. Dr. Humbert's testimony shows that he was paying no attention at all to his footing. According to his testimony, if he had looked down at the floor upon which he was walking, he could have well observed not only the changed position of the runner but also the slick condition of the floor. He testified that he fell as he started to make the right turn to go into the vestibule. What was he doing when he started to make the turn? The following testimony answers the question:

"143 What were you looking at as you turned the corner?

"A. Looking straight ahead.

"144 You weren't looking at the floor?

"A. No one does when they are walking."

■ He admits that he wasn't looking at the floor. He admits that he could have seen the condition that caused his injury if he had been looking. Yet he contends that the question of his contributory negligence should have been submitted to the jury. We cannot agree. His failure to look where he was walking would not alone preclude his recovery but, when his own evidence positively discloses that he could have seen the offending conditions by looking, then recovery is so precluded.

■ This does not mean that one must look directly down at his feet with each step taken but, in the exercise of ordinary care for his own safety, one must observe generally the surface upon which he is about to walk. This the plaintiff admitted he didn't do.

■■ As to whether ordinary care has been exercised is generally a question for

a jury but when, as here, the plaintiff's own testimony shows affirmatively that no care was exercised there is no issue for the jury's determination. We think the facts of this case place it substantially within the holding of this Court in J. C. Penny Co. v. Mayes, Ky., 255 S.W.2d 639, 643, in which it was said:

" * * * An invitee's right to assume that premises which he has·been invited to use are reasonably safe does not relieve him of the duty to exercise ordinary care for his own safety nor license him to walk blindly into dangers which are obvious, known to him, or that would be anticipated by one of ordinary prudence. Lachat v. Lutz, 94 Ky. 287, 22 S.W. 218, 15 Ky. Law Rep. 75, and Lyle v. Megerle, 270 Ky. 227, 109 S.W.2d 598.

"Appellee testified that she walked toward the step-down in broad daylight and that her eyes were riveted on a boy who was picking up something in a show window at the time she fell. She confessed she could have seen the step if she had been looking down at the time. It appears that appellee's accident resulted from her own conceded negligence; therefore, the company is not legally responsible for injuries she brought upon herself by her lack of ordinary care for her safety. There is no justification for her failure to watch her step because her gaze was irresistibly drawn to movements in the show window, as counsel seem to imply in their brief. To uphold this theory would make the company liable as an insurer and not because of negligence. Cates v. Evans, Mo.App., 142 S.W.2d 654. "

It is our opinion that the trial judge was correct in directing a verdict for the defendant upon the ground of contributory negligence. This conclusion makes it unnecessary to answer other questions involved.

The judgment is affirmed.